## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **ALAN K. RICHARDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.  09-14280-CIV-MOORE** |
| | ) | Magistrate Judge Lynch |
| **AYUSMAN SEN, PENNSYLVANIA** | ) | |
| **STATE UNIVERSITY, PENN STATE** | ) | |
| **RESEARCH FOUNDATION, and** | ) | |
| **MCQUAIDE BLASKO FLEMING &** | ) | |
| **FAULKNER, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### DEFENDANTS' MOTION TO DISMISS COMPLAINT AND MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND INCORPORATED MEMORANDUM OF LAW

Defendants, Professor Ayusman Sen, The Pennsylvania State University, The Penn State Research Foundation, and McQuaide Blasko Fleming & Faulkner, Inc., by and through undersigned counsel, and pursuant to Rules 8, 12(b)(2), 12(b)(3)and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully request that Plaintiff's Complaint [DE 1] be dismissed in its entirety, and that Plaintiff's counsel be sanctioned pursuant to 28 U.S.C. § 1927.  In support of this Motion, Defendants state as follows:

### INTRODUCTION

The most recent Complaint filed by Plaintiff, Alan K. Richards ("Richards" or "Plaintiff") must be dismissed as yet another unsuccessful attempt to plead his meritless claims against these Defendants.  Over the past two years, Plaintiff has forced Defendants to incur exorbitant costs to defend themselves against two previous lawsuits and five complaints, consisting of essentially the same allegations and claims and ultimately dismissed by this Court.

However, once again, Plaintiff's Complaint suffers from a variety of both procedural defects and substantive defects, any one of which warrants dismissal of the entire action.

As a threshold matter, although the Complaint is 32 pages long and Plaintiff's fifth attempt to allege proper jurisdictional allegations against these non-resident Defendants, there are no allegations whatsoever, much less sufficient allegations, to establish this Court's personal jurisdiction over any of the Defendants.  Instead, the few jurisdictional allegations contained in the Complaint, as well as the Declarations attached hereto, evidence that Defendants are residents and/or citizen of the Commonwealth of Pennsylvania without sufficient contacts to hale them into court in the State of Florida.[1]

Aside from these jurisdictional insufficiencies, venue in the Southern District of Florida is entirely improper.   For this reason as well, this action should be dismissed.

There are substantive grounds to dismiss the Complaint as well.  Plaintiff's pleading is a gross departure from Rule 8, which requires a short and plain statement that should be concise and direct.   As discussed below, Plaintiff's Complaint contains numerous, unnecessary, redundant, immaterial, argumentative and evidentiary allegations.   Accordingly, Defendants should not be required to answer Plaintiff's current pleading because it would require the Defendants to sift through a morass of allegations and impertinent commentary and exhibits to discern relevant information for Plaintiff's possible claims.

Even if this Court allows this Complaint to remain in this Court in its current form, it must still be dismissed because it fails to allege any cognizable claim against the Defendants.

---

[1]        Exhibits A – D attached hereto are the Declarations that were filed in connection with Defendants' earlier-filed Motions to Dismiss.  Since there have been no changes to Defendants' connections to the State of Florida or, rather, lack thereof, since the initial filing of these Declarations, the statements made therein are equally effective as to this newly filed Complaint.

Many of the claims appear to be criminal in nature, and therefore not viable in a civil case. Additionally, many of the essential legal elements of the purported claims are missing.

For all the foregoing reasons, the Complaint must be dismissed in its entirety. In addition to dismissal of the Complaint, Defendants seek sanctions against Plaintiff's counsel pursuant to 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in the case.

## STATEMENT OF ALLEGED FACTS

1.      Plaintiff alleges that Defendant Professor Ayusman Sen ("Sen") is a chemistry professor at The Pennsylvania State University ("Penn State") and that, at all relevant times, his actions were within the scope of his employment with, done and for the benefit of Penn State and its affiliate, The Penn State Research Foundation (the "Foundation") (collectively, Sen, Penn State and the Foundation shall be referred to herein as "PSU Defendants"). Compl. at ¶ 5.

2.      Penn State is located in State College, Pennsylvania and is a not-for-profit, land grant, educational institution organized under the laws of the Commonwealth of Pennsylvania and is an instrumentality of the Commonwealth of Pennsylvania. Compl. at ¶ 6; see also Declaration of Joseph J. Doncsecz on behalf of Penn State ("Doncsecz Decl.") at ¶¶ 2-3, a copy of which is attached hereto as **Exhibit A**.

3.      The Foundation is alleged to be a subsidiary, affiliate, and/or agent of Penn State with offices on the University's campus in Pennsylvania. Compl. at ¶ 7. The Foundation is alleged to act on behalf of Penn State in connection with patent ownership, management and licensing matters. Compl. at ¶ 7. The Foundation is an organization established as a non-profit corporation under the laws of Commonwealth of Pennsylvania and is a 501(c)(3) organization. See Declaration of David E. Branigan on behalf of the Foundation ("Branigan Decl.") at ¶ 2, a copy of which is attached hereto as **Exhibit B**.

4.     The Complaint further alleges that Defendant McQuaide, Blasko, Fleming & Faulkner, Inc. ("McQuaide Blasko") is a law firm that works for and is an agent for Defendants Penn State, the Foundation, and professors at Penn State.  Compl. at ¶ 8.

5.     Plaintiff Alan Richards ("Richards") claims to reside in Martin County, Florida. Compl. at ¶ 3.

6.     Notably, none of the Defendants were alleged to have initiated contact with Plaintiff.  Instead, Plaintiff admits that "*Richards disclosed* the chemical reaction and computer modeling results to Defendant Sen" and that both Sen and "*Richards contacted* the proper Penn State officials."  Compl. at ¶¶ 16, 18 (emphasis added).  By his own admission, "*Richards chose Sen* to do the first confirmatory work in a lab. . . ."  Compl. at ¶ 27 (emphasis added).

7.     Plaintiff alleges that Sen signed a Confidentiality, Disclosure and Non-Use Agreement (the "Confidentiality Agreement"), a copy of which is attached to the Complaint as Exhibit 2.  Compl. at ¶ 16.  The only other party to this Confidentiality Agreement was GTL Technologies Inc. ("GTL"), which was a Delaware corporation having its principal place of business in Houston, Texas.  See  Compl. at Ex. 2.  The Confidentiality Agreement designated GTL as the "Owner" of the confidential information that was to be provided to Sen pursuant to the Agreement.  See Compl. at Ex. 2.  Additionally, the Confidentiality Agreement is governed by the laws of the Commonwealth of Pennsylvania.  Compl. at Ex. 2, § 6.8.

8.     In his role as a Penn State researcher, Sen signed the Confidentiality Agreement in Pennsylvania.  See Declaration of Ayusman Sen ("Sen Decl."), at ¶ 13, a copy of which is attached hereto as **Exhibit C**.  At the time Sen was communicating with Richards and signed the Confidentiality Agreement with GTL, Sen believed that GTL was located in Houston, Texas. Sen Decl. at ¶¶ 10 and 15.  Although Plaintiff attempts to rely on Plaintiff's Exhibit 3 to show

Sen had some knowledge that Richards was located in Florida prior to signing the Agreement, Richards is not a party to this Agreement. <u>See</u> Compl. at Ex. 2. Moreover, Richards has inserted his own commentary into the emails, which calls the authenticity of the exhibit into serious question. <u>See</u> Compl. at Ex. 3.

9.      Richards and Sen then contacted the proper Penn State officials to create a contract referred to as the "STTR Contract," a copy of which is attached to the Complaint as Ex. 10. Compl. at ¶ 18. The STTR Contract was executed by Penn State and GTL, which represented that it had a principal place of business in Houston, Texas. Compl. at Ex. 10. At the time Penn State entered into the STTR Contract, Penn State understood GTL to be a Delaware corporation with its principal place of business in Houston, Texas. Doncsecz Decl. at ¶ 19.

10.     As admitted by Plaintiff, the STTR contract secured funds from GTL to Penn State to support "the research *in Sen's labs at Penn State*" and that the research would be "performed in chemistry labs supervised by Sen, *at Penn State University*." Compl. at ¶¶ 30, 31 (emphasis added).

11.     The Complaint does not mention that any meetings between the parties took place or would occur in Florida  The Declarations filed in connection with this motion confirm that no such meetings occurred here.

12.     Although the Complaint centers around the preparation, filing, and prosecution of the U.S. Patent 7,119,226 (the "'226 Patent" or the "Sen Patent"), there are no allegations that the Sen Patent was prepared or prosecuted in Florida. Instead, any and all of McQuaide Blasko's work with respect to the Sen Patent was conducted in Pennsylvania. <u>See</u> Declaration of Mark Righter ("Righter Decl."), at ¶ 16, a copy of which is attached hereto as **Exhibit D**.

13.     Although the Plaintiff alleges that Defendants made a decision in June 2006 to pay an issue fee (Compl. at ¶ 51), Plaintiff did not allege that the Defendants made that decision in Florida or that the issue fee was in any way connected to the state of Florida.   In fact, Plaintiff's Exhibit 16 shows that the issue fee was submitted by McQuaide Blasko from State College, Pennsylvania on behalf of the Foundation from University Park, Pennsylvania, and was mailed to Alexandria, Virginia.  Compl. at Ex. 16.

## **MEMORANDUM OF LAW**

### I.     **THERE IS NO PERSONAL JURISDICTION OVER THE NON-RESIDENT DEFENDANTS IN THIS CASE.**

The Eleventh Circuit requires a two-part analysis to determine whether a district court has personal jurisdiction over non-resident defendants.  See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 256 (11th Cir. 1996).  First, the court must decide whether there is a basis for jurisdiction under the state long-arm statute.  Id. (citing Madera v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).  Second, the court must determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id.  (quoting Madera, 916 F.2d at 1514).  With these principles in mind, the burden is on the plaintiff to allege personal jurisdiction by "pleading material facts to establish the basis for exercise of such jurisdiction." Future Technology Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (quoting Prentice v. Prentice Colour, Inc., 229 F. Supp. 578, 583 (M.D. Fla. 1991)).  Plaintiff has failed to meet his burden in this case.

### A.     **Florida Long-Arm Statute Requirements**

#### (1)     **Specific Jurisdiction**

Under the Florida long-arm statute, the federal court would have specific jurisdiction over the non-resident defendants for any cause of action arising from the defendants engaging in the following acts:

(a)   Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b)   Committing a tortious act within this state.

(c)   . . . [concerning liens or mortgages on real property] . . . .

(d)   . . . [concerning insurance contracts] . . . .

(e)   . . . [concerning family law] . . . .

(f)   Causing injury to person or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1.   The defendant was engaged in solicitation or service activities within this state; or

2.   Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g)   Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(h)   . . . [concerning paternity] . . . .

Fla. Stat. § 48.193(a)-(h) (2009).

Plaintiff has not alleged any material facts whatsoever that would subject any of the Defendants to specific jurisdiction under any subsection of the Florida long-arm statute. First, it is undisputed that each Defendant resides in the Commonwealth of Pennsylvania. Compl. at ¶¶ 5-7; Sen Decl. at ¶¶ 2-3. Penn State and the Foundation are headquartered and conduct business in Pennsylvania. Doncsecz Decl. at ¶¶ 2-4; Branigan Decl. at ¶¶ 2-3. As noted by this Court in its previous order dismissing Plaintiff's case, "None of the Defendants in this action are residents of Florida, incorporated in Florida, or headquartered in Florida." Order Granting Defendants' Motion to Dismiss, Case No. 07-14254-CV-MOORE/LYNCH, p. 3, n.3, attached hereto as **Exhibit E** (referred to hereinafter as the "Order"). There are no allegations that any of the

Defendants were operating, conducting, engaging in, or carrying on business in the state of Florida, as required by Section 48.193(1)(a), Florida Statutes.  No Defendants are alleged to have an office, agency or subdivision in this state. Fla. Stat. § 48.193(1)(a).  Further, Plaintiff fails to allege any facts regarding the following factors considered by the courts:  "presence and operation of an office in Florida, the possession and maintenance of an office in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients." Einmo v. Aecom Government Services, Inc., 2007 WL 2409816, *6 (M.D. Fla. 2007) [2] (citing Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1167 (11th Cir. 2005)).  Moreover, neither Professor Sen nor McQuaide Blasko solicit any business from Florida, and while Penn State does derive some revenues from Florida residents, it is minimal. Sen Decl. at ¶ 5; Doncsecz Decl. at ¶ 7.

Second, Plaintiff also failed to allege that any of the Defendants committed a tortious act within the state of Florida.  First, only four of the six causes of action can even be construed as tort claims.  Therefore, this jurisdictional basis is wholly inapplicable to the declaratory relief claims in Counts I and II.  With respect to the remaining claims, there are simply no allegations that any of the Defendants conducted any activities, *much less tortious activities*, in Florida.  In order to subject a defendant to specific personal jurisdiction in Florida for alleged torts, the plaintiff "must demonstrate that an activity in Florida was essential to the completion of the tort." Santilli v. Cardone, 2008 WL 2790242 (M.D. Fla.  July 18, 2008).  In this case, the Complaint is replete with references that Defendants' activities occurred in the state of Pennsylvania at the campus of Penn State, or within the Pennsylvania offices of the McQuaide Blasko law firm, not

---

[2] Copies of all unpublished decisions cited herein are attached hereto as **Composite Exhibit F.**

in Florida.  See e.g.,  Compl. at ¶¶ 6-9, 27, 29.  The attached Declarations confirm that no activities relating to Plaintiff ever occurred in Florida.

Plaintiff's argument that Defendants' statements to the patent examiner were "Defamation, Slander of Title, and Injurious Falsehood" constituting a tort in the state of Florida is completely specious.  Defendants' statements did not occur in Florida, and, in any case, are privileged and cannot subject Defendants to jurisdiction based on a tort claim.[3]  Moreover, the mere fact that certain filings may be accessed through the U.S. Patent and Trademark ("PTO") on-line database, is of no consequence.  Defendants do not control the PTO website, and therefore, the postings on the PTO website should not be attributable to Defendants.[4]  Taking Plaintiff's argument to its logical conclusion, the mere fact that anyone can access a filing on the PTO website would subject all patent filers to jurisdiction to every state in the country, if anyone contends that a filing is "defamatory."  This is not the law.  See Roblor Marketing Group, Inc. v. GPS Industries, Inc., 2009 WL 2003156 (S.D. Fla. 2009) ("The mere world-wide accessibility of [Defendant's] websites in the absence of any actual interaction will not support a finding that jurisdiction attaches.").

With respect to the other websites listed in the Complaint, there is no allegation that Defendants physically or directly published or circulated anything into the state of Florida or to Florida residents, which defames Plaintiff.  First, Richards is not even mentioned in any of those postings.  Second, all but one website listed by Richards is controlled by someone other than the

---

[3]         See discussion in Section IV.C, infra.

[4]         As noted by the Court in its previous Order, "[e]ven assuming that the Sen 226 Patent contains tortious statements or omissions, Defendants did not purposely direct any activity towards Florida by filing the Sen 226 patent application."  Exhibit E, p. 9.  Similarly, the PTO's unilateral posting of the Sen 226 patent on the PTO's website would not be sufficient to show that Defendants purposely directed any activity towards the State of Florida.

Defendants, and therefore, Defendants cannot be held liable for the actions of those third parties. The only website controlled by Defendants merely lists the '226 Patent, which is hardly sufficient to subject Defendants to jurisdiction on a defamation claim. Third, each of the websites listed in the Complaint are merely passive (as opposed to interactive sites) providing information on the '226 Patent, which is insufficient for jurisdiction. See, e.g., Miller v. Berman, 289 F. Supp. 2d 1327, 1336 (M.D. Fla. 2003) ("The website at issue here is a passive one which merely makes information available to individuals who are interested in purchasing sailboats. Thus, the exercise of jurisdiction over Defendants in the State of Florida is not proper."). This Court previously cited Renaissance Health Publishing, LLC v. Resveratrol Partners, LLC, 982 So. 2d 739, 742 (Fla. 4th DCA 2008) for "finding that defamatory statements made on defendant's [own] interactive website which sells products to Florida was sufficient for the exercise of jurisdiction under the long-arm statute." However, the Renaissance Court specifically distinguished its ruling from the situation present in this case: "[T]his case is distinguishable from internet defamation cases involving passive websites not designed to market products in the purported forum state." Id. There are no allegations or record evidence that Defendants posted any information on their own websites designed for the purpose of marketing products in the state of Florida, and therefore, the Renaissance case does not subject Defendants to jurisdiction under the long-arm statute. Further, Plaintiff has failed to allege that any Florida resident has even accessed the information on the websites.

Similarly, there are no allegations that Defendants tortiously interfered with any relationships in Florida. Indeed, there are no allegations that Defendants contacted any third parties to interfere with Plaintiff's alleged, but unspecified, contracts, especially not in Florida. Finally, to the extent Plaintiff's claims arise from alleged conversion or inequitable conduct

relating to the filing and prosecution of a patent application, none of those activities were alleged to have occurred in Florida. Instead, Plaintiff repeatedly states that Defendants' activities occurred in the state of Pennsylvania at the campus of Penn State. See, e.g., Compl. at ¶¶ 30-31. Having failed to demonstrate that each Defendant committed an essential component of the alleged torts in Florida, personal jurisdiction cannot be based on Section 48.193(1)(b).

Third, Plaintiff makes no allegations that Defendants caused injury to Plaintiff or property within Florida arising out of an act or omission by the Defendants outside of Florida, while the Defendants were engaging in solicitation or service activities within the state of Florida. See Snow v. DirecTV, Inc. et al., 450 F.3d 1314, 1318 (11th Cir. 2006) (explaining that a defendant's out of state actions must cause personal injury or damage to physical property within the state of Florida under the long-arm statute); Response Reward Systems, L.C. v. Meijer, Inc., 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002) (allegations of economic damages or financial injury are not sufficient for jurisdiction under Fla. Stat. § 48.193(1)(f)). In fact, neither Professor Sen nor McQuaide Blasko solicited business in Florida. Sen Decl. at ¶ 5. Arguably, Penn State engages in some solicitation within the state of Florida for the purpose of recruiting students and development initiatives from alumni. However, Plaintiff makes no allegations regarding this possible solicitation in Florida or that such solicitation was in any way related to Plaintiff's purported "injuries." Powercerv Technologies Corporation, Inc. v. Ovid Technologies, Inc., 993 F. Supp. 1467, 1470 (M.D. Fla. 1998) (Defendant's "advertising in the State of Florida [is] unrelated to the alleged breach of contract"); Murphy v. Republic Health Corp., 645 F. Supp. 124, 125 (S.D. Fla. 1986) (holding that Plaintiff failed to meet the burden of establishing in personam jurisdiction over non-resident defendants under Florida law, because Plaintiff failed to allege that the defendants engaged in solicitation activities "within this state."); see also Bond v.

Ivy Tech State College, 2006 WL 306046 (11th Cir. 2006) (holding that Indiana college did not meet the long-arm statute or have sufficient contacts to Florida, even though it mailed student admissions packets to Florida residents, maintained a website, and offered distance learning courses over the Internet).

Fourth, Plaintiff does not allege that any breach of contract was caused by Defendants' failure to perform acts required to be performed in Florida.  See Groome v. Feyh et al., 651 F. Supp. 249 (S.D. Fla. 1986) (finding that the Plaintiff's Complaint failed to satisfy the Florida long-arm statute because the written contract between the parties lacked a requirement that any act, under the contract, be performed within the state of Florida).  Instead, by Plaintiff's own admissions, any acts required to be performed under the Confidentiality Agreement or STTR Contract were to be performed in Pennsylvania.  See, e.g., Compl. at ¶¶ 30-31.

        (2)      **General Jurisdiction**

Under the Florida long-arm statute, defendants may be subject to general jurisdiction if they engaged in substantial and not isolated activity within Florida.  Fla. Stat. § 48.193(2) (2009).  If there is general jurisdiction, the defendants may be sued in Florida whether or not the claim arises from their activities in Florida.  Id.

Plaintiff's Complaint utterly fails to allege facts that would subject any of the Defendants to general jurisdiction.  The term "substantial and not isolated activity" used in Section 48.193(2) means "continuous and systematic general business contact" in Florida.  Snow, 450 F.3d at 1318 (citing Woods v. Nova Cos. Belize Ltd., 739 So. 2d 617, 620 (Fla. 4th DCA 1999)).  Plaintiff failed to allege that any of the Defendants engaged in substantial and not isolated activity within the state.  Further, Plaintiff has failed to allege that any of the non-resident Defendants actually procured business in Florida or solicited business through continued or sustained efforts.  Bond,

2006 WL 306046; Price v. Point Marine, Inc., 610 So. 2d 1339, 1341 (Fla. 1st DCA 1992).  Cf. Carlson v. Armstrong World Industries, Inc., 693 F. Supp. 1073, 1075-76 (S.D. Fla. 1987) (holding that Plaintiff's allegations that "all named defendants have transacted substantial revenue-producing business in the state of Florida since 1942" were sufficient to subject the defendants to the general jurisdiction provision of the long-arm statute).  Moreover, the Declarations filed by each Defendant conclusively establish that Defendants have not engaged in any such activities.  See, generally,  Exhibits A-D.

In Snow, the Eleventh Circuit determined that the Florida courts did not have personal jurisdiction over a defendant for facts showing more contact with Florida than the present case. In that case, one of the defendants was an attorney from Washington state, who represented DirecTV.  450 F.3d at 1219.  The Eleventh Circuit determined that the Florida court did not have general jurisdiction over the attorney, even though the attorney had engaged in negotiations on DirecTV's behalf with some Florida residents, appeared seven times as counsel of record for DirecTV in Florida, and represented four Florida clients in Washington courts.  Id.  The Court determined that these factors were far outweighed by the attorney's lack of a physical presence in Florida, its non-solicitation of Florida clients, and its deriving less than one percent of its revenues from matters connected with Florida.  Id.  Accordingly, the Court determined that the attorney was not subject to general jurisdiction under Florida's long-arm statute.  Similarly, the Court in this case should find no general jurisdiction as to Professor Sen or McQuaide Blasko.

As for Penn State or the Foundation, Plaintiff fails to make any allegations or plead any facts that either of these entities engaged in any activities in Florida, much less substantial or continuous activities that would subject them to general jurisdiction.  Even if such allegations were made, however, they would be refuted by the fact that the Foundation engages in no

activities in Florida and because Penn State's activities are too minor to be considered "continuous" or "systemic."  See Bond, 2006 WL 306046 (holding that Indiana college did not meet the long-arm statute or have sufficient contacts to Florida, even though it mailed student admissions packets to Florida residents, maintained a website, and offered distance learning courses over the Internet).

In sum, Plaintiff has not and cannot establish jurisdiction over any of the non-resident Defendants under Florida' long-arm statutes.  Thus, the inquiry should end here and the case should be dismissed in its entirety.

**B.**     **Due Process Analysis**

(1)     **Minimum Contacts**

Only if the Court determines that Plaintiff's allegations satisfy the Florida long-arm statute will the Court need to conduct the second step of the personal jurisdiction analysis.  The second step requires the Court to determine whether sufficient minimum contacts exist and whether the exercise of personal jurisdiction over the Defendants would comport with traditional notions of fair play and substantial justice.  Madera v. Hall, 916 F.2d 1510 (11th Cir. 1990).  Courts apply the following factors to determine whether sufficient minimum contacts exist:  (1) the contacts must be related to the plaintiff's cause of action or have given rise to it; (2) contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby involving the benefits and protections of its laws; (3) the defendants' contacts within the forum statute must be such that they reasonably anticipate being haled into court there.  Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994) (internal citations omitted).

As this Court has previously decided, "these claims fail to comport with due process because Defendants did not have fair warning that filing the patent application, which led to the

PTO's subsequent grant of the Sen 226 Patent, would subject them to suit in Florida. . . . Additionally, the Defendants never visited Florida for any purpose related to these claims, did not maintain offices in Florida, did not conduct any tests in Florida, did not file the patent application from Florida, and did not have any other connection with the State of Florida in relation to the allegedly tortious acts."  <u>See</u> Exhibit E, p. 9-10.  Similarly, in an Order of Dismissal for Improper Venue in the case of <u>Montes v. Kaplan, Kenego & Kadin,</u> the Southern District determined that the defendants had absolutely no contacts with the state of Florida, based on the following factors:  (1) they were residents of state other than Florida; (2) the company was organized under another state's laws; (3) the law firms had not practiced law in Florida or established subsidiaries to do business in Florida; (4) they never had a place of business in Florida or any offices or agents in Florida; (5) they never had a telephone listing, mailing address, or bank account in Florida; (6) they never owned tangible or real property in Florida; (7) they never directed any activities toward residents of Florida or otherwise established contacts with Florida; (8) they never held meetings in Florida or attended business conferences or similar business functions in Florida; (9) they did not advertise or direct any of their advertising specifically toward Florida residents, and did not advertise in any publications that were directed primarily toward residents of Florida.  <u>Montes v. Kaplan, Kenego & Kadin</u>, Case No. 03-21531-CIV-ALTONAGA/Bandstra, Order of Dismissal for Improper Venue (S.D. Fla. Oct. 16, 2003).

Likewise, in <u>Groome v. Feyh et al.,</u> the Southern District dismissed the plaintiff's complaint for lack of personal jurisdiction.  651 F. Supp. 249 (S.D. Fla. 1986).  The Court held that telephone calls between non-resident defendants and a plaintiff residing in Florida, mail between the parties, and possible contract negotiations by telephone were not enough to meet the minimum contacts test for personal jurisdiction.  <u>Id.</u> at 255-56.  The Court stated that the

"existence of a contract between the foreign defendant[s] and a resident of the forum state [does not] automatically amount to 'purposeful availment.'" Groome, 651 F. Supp. at 256 (quoting Sea Lift, Inc. v. Refinadaora Costarricense, 792 F.2d 989, 993 (11th Cir. 1986) (citations omitted)).

The "contacts" with Florida in this case have not changed since the Court originally dismissed this action last year.  Nor have they changed since the Court denied Plaintiff's motion for reconsideration after Plaintiff first presented the e-mail that is attached to this new complaint as Exhibit 3.  First, with respect to the PSU Defendants, there was no contact at all by the Foundation with Florida.  Branigan Decl. at ¶11.  Plaintiff admits that *he* initiated contact with both Professor Sen and Penn State.  Compl. ¶¶ 16, 18, 27.  Thus, there can be no purposeful availment of Florida privileges when the PSU Defendants initiated no contact here.  Moreover, the relevant agreements signed by the PSU Defendants make absolutely no reference to the state of Florida.  See, e.g., Compl., Ex. 2 and 10.  Although Richards clings to the fact that he sent an email instructing Sen to mail him an agreement to an address in Florida, that email does not establish *Defendants'* minimum contacts.  As this Court has already ruled, "[a]lthough Plaintiffs allege that Defendants had knowledge that Richards resided in Florida as early as March 30, 2004, Richards was not a party to the Confidentiality Agreement, and the Confidentiality Agreement was not negotiated in Florida."  Exhibit E, p. 10.  As such, these Defendants had no basis to believe they would be haled into court here.   Accordingly, as this Court has already ruled (twice), Plaintiff has clearly failed to allege, and simply cannot establish, that any Defendants had minimum contacts with the state of Florida.

### (2) Traditional Notions of Fair Play and Substantial Justice

In determining whether the exercise of personal jurisdiction over the Defendants would comport with traditional notions of fair play and substantial justice, the court should examine the following factors:   (a) the burden on the Defendants; (b) the interest of the forum state in adjudicating the dispute; (c) Plaintiff's interest in obtaining convenient and effective relief; (d) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantive social policies.  See Future Technology, 471 U.S. 462, 466 (1985).

In Groome, the Southern District determined that fair play and substantial justice did not call for the litigation to be held in Florida, when all of the defendants were from Missouri, the plaintiff's residence was in Florida, the contract was signed in Missouri, and the defendant corporation's base of activity was in Missouri.   Groome, 651 F. Supp. at 256.   The Court reasoned that "[t]he burdens on the defendants to defend in a foreign forum are significant and outweigh the convenience to the plaintiff of suing in Florida merely because his residence is here.  Additionally, Missouri has a significant interest in redressing wrongs committed within its borders . . . . Florida's relationship to the defendants is attenuated at best."  Id.; see also Response Reward Systems, 189 F. Supp. at 1339 (the burden on a non-resident defendant without ties to Florida would be substantial, because it would have to bear the cost of transporting its documents and witnesses to Florida).

Applying the rationale in Groome, the personal jurisdiction over the Defendants would not comport with the traditional notions of fair play and substantial justice.  The Defendants all reside and work or operate in Pennsylvania, and will experience a significant burden to litigate this claim in the state of Florida.  Florida has little, if any, relationship to the litigation or the Defendants, and therefore, would not have a significant interest in adjudicating the matter.

Instead, Pennsylvania would have a greater interest in adjudicating a dispute regarding one of its state universities, a chemist employed by that university, and a law firm with several offices within the Commonwealth.  The actual research that is the subject of this action was conducted pursuant to a Department of Energy subcontract with Penn State and performed in Pennsylvania on facilities owned by an instrumentality of the Commonwealth.  Additionally, the Confidentiality Agreement between Sen and GTL indicates that Pennsylvania law will apply.  See Compl., Ex. 2 at p. 6.  For all these reasons, Pennsylvania would be a more appropriate forum to adjudicate this dispute.  In direct contrast, aside from the convenience of Plaintiff Richards who recently moved to Florida, there is no evidence that Florida would be a better forum for reaching an efficient resolution.  If anything, the logistics of litigation would be more difficult in Florida since virtually all of the evidence and witnesses reside outside of the state.

For all the foregoing reasons, this Court should dismiss this Complaint in its entirety as to all Defendants, for lack of personal jurisdiction pursuant to Rule 12(b)(2).

## II.     VENUE IN THIS DISTRICT IS INAPPROPRIATE.

Putting aside the personal jurisdiction grounds which prevent this case from being maintained in Florida, venue in this District is still inappropriate and warrants dismissal.

Plaintiff asserts that this action is governed by 28 U.S.C. § 1391 (general venue statute), as opposed to 28 U.S.C. § 1400(b) (specific patent infringement statute).  Compl. at ¶ 3.  As with personal jurisdiction, Plaintiff has the burden to establish that venue is appropriate in this district. Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 406 (D.N.H. 1987).  "In a case where multiple claims are joined, venue must be proper for each claim." Id. at 406.

Under 28 U.S.C. § 1391(b), venue is appropriate "only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the events occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found."  28 U.S.C. § 1391(b).  As set forth above, none of the Defendants reside in the Southern District of Florida, nor can any of them be found here.  Thus, the only applicable venue provision would be § 1391(b)(2), and the question is whether each claim arises in the Southern District of Florida.

Count I is entitled "Declaratory Judgment Re: Sen '226 Patent" and appears to seek to invalidate the Sen '226 Patent.  The patent lists Sen, co-inventor, Dr. Minren Lin and assignee, The Foundation, as having addresses in State College, Pennsylvania, and this patent was prosecuted by McQuaide Blasko, who is also located in Pennsylvania.  Thus, if the claim by Plaintiff is that Defendants somehow engaged in inequitable conduct before PTO in connection with this patent, this claim could not possibly have arisen in Florida.  Similarly, Count II, which purports to deal with the Pennsylvania based inventors' claims of ownership, also fails to arise in the state of Florida.

Similarly, Claim III, entitled "Defamation, Slander of Title, and Injurious Falsehood" fails to arise in the state of Florida.  Although Plaintiff's Complaint is not clear, it appears that Plaintiff is relying on statements made by Defendants to the PTO in a reexamination proceeding (initiated by Richards) as the basis for the defamation claim.  Any alleged statements made by Defendants would have occurred in Pennsylvania or Virginia (where the PTO is located), not in Florida.  To the extent Plaintiff attempts to rely upon the PTO's website which contains the Sen Patent to somehow claim that Richards has been defamed or that "Defendants' falsehoods have

influenced the conduct of third parties in the oil, gas, and petrochemical industries," Count III fails to arise in Florida as there are no allegations that Defendants were ever in the state of Florida, much less engaging in the alleged behavior in Florida. For the same reason, Claim IV of "Tortious Interference with Prospective Economic Advantage" also fails to arise in the state of Florida. Similarly, Count V of "Unfair Competition" and Count VI of "Antitrust Violations" are not alleged to have occurred in Florida. Indeed, none of the activities which purport to form the basis for these claims is alleged to have been conducted by any of the Defendants in Florida.

For all these reasons, venue in this district is improper and warrants a dismissal of this action in its entirety.

## III. THE 32-PAGE AMENDED COMPLAINT AND 139 PAGES OF INCORPORATED EXHIBITS SHOULD BE DISMISSED BECAUSE IT IS IN FLAGRANT VIOLATION OF RULE 8's PLEADING REQUIREMENTS.

The sufficiency of a complaint is measured by Rule 8, Fed. R. Civ. P., which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Canadyne-Georgia Corp. v. Nationsbank, 183 F.3d 1269, 1275 (11th Cir. 1999); City of Fort Lauderdale v. Ross, Saarinen, Bolton & Wilder, Inc., 815 F.Supp. 444, 446 (S.D. Fla. 1992). The Supreme Court has emphasized that the Federal Rules "do not require a claimant to set out in detail the facts upon which he bases his claim." Canadyne, 183 F.3d at 1275 (quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Furthermore, "purpose of Rule 8 is to put the adverse party on notice of what to expect and to require brevity." Dismuke v. Fla. Bd. of Governors, 2005 WL 1668895, *3 (M.D. Fla. 2005). The "notice pleading" of Rule 8 was adopted to focus litigation on the merits of the claim and to "avoid situations wherein pleading is so verbose that [the] court cannot identify with clarity claims of [the] pleader and adjudicate such claims understandingly on the merits." Id. at

*1, *3; see also Walter Reade's Theatres v. Loew's, 20 F.R.D. 579, 582 (S.D.N.Y. 1957) ("The purpose of Rule 8(a)(2) is to avoid verbose allegations; to notify the defendants of the claim upon which plaintiff seeks recovery; to assist and not deter the disposition of litigation on the merits; to achieve brevity and clarity in pleading and to shape the issues for trial.").

The Court may strike or dismiss an entire complaint without prejudice on the basis of Rule 8(e) where there is a gross violation of the spirit of that rule. Iafrate v. Compagnie Generale Transatlantique et al., 12 F.R.D. 71, 72 (S.D.N.Y. 1951). For example, in Burks v. City of Philadelphia, the Court dismissed the Plaintiff's Complaint in its entirety because the pleading was a gross departure from both the letter and the spirit of Rule 8(a)(2). 904 F.Supp. 421, 424 (E.D. Penn. 1995). In Burks, the complaint was a "fact-laden, 36-page, 128-paragraph narrative that describe[d] in unnecessary, burdensome, and often improper argumentative detail, every instance of [the alleged wrongs]." Accordingly, the Court held that the Complaint did not present a "short and plain statement" as required by the Rule 8 and improperly attempted to shift the factual emphasis to the pleadings stage instead of the discovery stage. See also Lonesome v. Lebedeff, 141 F.R.D. 397, 398 (E.D. N.Y. 1992) (dismissing the Plaintiff's Complaint containing 452 paragraphs and 63 pages of vague and incomprehensible allegations, because forcing a defendant to answer it would "fly in the face of the very purposes for which Rule 8 exists"); Burns v. Spiller, 4 F.R.D. 299, 300 (D.D.C. 1945) (dismissing Plaintiff's Complaint consisting of 32 legal-size typewritten pages and made up largely of evidentiary matter).

Similarly, in Martin v. Hunt, the Court dismissed Plaintiff's Amended Complaint in its entirety. 29 F.R.D. 14, 16 (D. Mass. 1961). The Amended Complaint was "extremely verbose and rambling, and contain[ed] a lengthy recital of evidentiary matters . . . . It [was] filled with historical and background material which is totally irrelevant to [the cause of action]. Much of

the material therein [was] scandalous and vituperative." <u>Id.</u>  The Court described it as "completely at variance with the letter and the spirit of Rule 8(e)(1) which requires that each averment of a pleading be 'simple, concise and direct.'"  <u>Id.</u>; <u>see also</u>, <u>Dismuke</u>, 2005 WL 1668895, *4 (dismissing complaint and noting that "[w]hile Plaintiff's pleadings may sufficiently state a cause of action against the remaining defendant, the form and lengthy discussions are improper.  The Plaintiff must abide by the Federal Rules of Civil Procedure when pleading her case."); <u>Barid v. Dassau</u>, 1 F.R.D. 275 (S.D.N.Y. 1940) (dismissing a complaint under Rule 8 where:  (1) there were 48 paragraphs and only 24 were numbered, (2) long paragraphs were used, which included many different and separate allegations that should have been stated in separately numbered paragraphs, and (3) many of the allegations were argumentative, evidentiary, redundant, immaterial and impertinent)

    As with all the foregoing cases, the Complaint in this case is a gross departure from the letter and spirit of Rule 8.  Plaintiff's Complaint is 32 pages long, contains 100 numbered "paragraphs," with multiple sub-parts, and incorporates 139 pages of purported exhibits.  Many of these paragraphs contain more than one allegation, which should have been set forth in separate paragraphs in order for the Defendants to respond to each allegation accordingly. <u>Dismuke,</u> 2005 WL 1668895, *3.  In addition, most of the allegations, and virtually all of the exhibits contain argumentative, irrelevant, evidentiary, and immaterial information.  Plaintiff's allegations are also improper because they consist of dissertations on the purported uses of the patent, the development of the scientific research, and other unnecessary historical commentary. <u>Walter Reade's Theatres</u>, 20 F.R.D. at 582 ("Such proximities and such complexities do not constitute sound pleading.").  Further, Plaintiff attempts to assert six causes of action, each incorporating Paragraphs 1-81.  Compl. at ¶¶ 82, 84, 87, 92, 95, and 99.  Therefore, due to

Case 2:09-cv-14280-KMM   Document 13   Entered on FLSD Docket 11/16/2009   Page 23 of 35

Plaintiff's excessive pleading, each cause of action incorporates at least 81 paragraphs of convoluted information and exhibits. Defendants cannot even begin to address the substantive failures of the Plaintiff's causes of action because Defendants face the "unjustified burden" of selecting the "relevant material from a mass of verbiage." Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004). Plaintiff's Complaint flies in the face of Rule 8, and therefore, should be dismissed in its entirety.

**IV.    NONE OF PLAINTIFF'S CLAIMS STATE A CAUSE OF ACTION FOR WHICH THE REQUESTED RELIEF MAY BE GRANTED BY THIS COURT.**

   **A.    All Counts Must Be Dismissed As Currently Pled.**

As set forth in Section III, *supra*, given the morass of 81 allegations, plus 139 pages of exhibits incorporated into each of the six causes of action, Defendants cannot adequately discern which allegations form the basis for each cause of action, much less determine if the claims are properly pled or even ripe for determination. For this reason alone, all claims should be dismissed as alleged. Beyond the Rule 8 violation, each claim should be dismissed for failing to state a cause of action.

   **B.    The Declaratory Relief Counts Must Be Dismissed Because They Are Not Justiciable and Therefore this Court Has No Subject Matter Jurisdiction.**

Counts I seeks a Declaration that the Sen Patent is invalid and unenforceable. Count II seeks a Declaration as to the inventorship of the Richards Patent. These claims must be dismissed, under Rule 12(b)(1), for lack of subject matter jurisdiction, because they are not justiciable.

There is a two-part test for determining justiciability of suits for declarations of patent rights and relationships. "There must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it

ORLA_1454262.3

23

will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." Sensitron, Inc. v. Wallace, 504 F. Supp.2d 1180, 1182-83 (D. Utah 2007) (citing Super Sack Mfg. v. Chase Packaging Corp., 57 F.3d 1058 (Fed. Cir. 1995)).

In the instant case, as in Sensitron, Plaintiff is asking this Court to adjudicate the validity and inventorship of both the Sen and Richards Patents, without any allegations that Plaintiff will face infringement claims by the PSU Defendants without Court intervention. Nowhere in the Complaint is there even any suggestion of potential infringement. Moreover, the Complaint fails to allege any actual or imminent injury "that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Sensitron, 504 F. Supp.2d at 1185. Plaintiff merely seeks an advisory opinion from this Court which he can share with unnamed petrochemical companies who are allegedly considering transacting business with Plaintiff. This is not the function of federal courts. Therefore, Counts I and II must be dismissed because there is no justiciable issue to be determined by this Court.

Even if there is an actual justiciable controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline to exercise that jurisdiction. See Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc., 391 F. Supp.2d 1148 (S.D. Fla. 2005). If there is any situation which would warrant a federal court to decline to exercise jurisdiction, it is certainly this case. Indeed, since the filing of this new action, Plaintiff has filed a "Petition Requesting Review of Unconstitutional Act by Patent Office," which seeks that the PTO reconsider its ruling in connection with the reexamination

proceeding Richard previously filed, and lost, regarding the Sen Patent.[5]   Thus, once again, Plaintiff is concurrently seeking relief in both this Court and the PTO regarding the patents at issue.  There is simply no reason for this Court to duplicate these efforts, and, for this reason as well, and Counts I and II should be dismissed.

>           **C.       Plaintiff's Defamation Claims Cannot Be Sustained.**

Count III, entitled "Defamation, Slander of Title, and Injurious Falsehood" purportedly attempts to impose liability on Defendants based the "publication" of the '226 Patent and alleged statements made by Defendants to the PTO during the re-examination proceeding.   However, the allegations made in the Complaint, as verbose as they are, do not even come close to stating a cause of action for slander or defamation.

The elements of a cause of action for defamation are: (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to the plaintiff.   See Carlson v. WPLG/TV-10, Post-Newsweek Stations of Florida, 956 F.Supp. 994, 1006 (S.D. Fla. 1996) (citing Shaw v. R. J. Reynolds Tobacco Co., 818 F. Supp. 1539 (M.D. Fla. 1993), aff'd, 15 F.3d 1097 (1994)).   Importantly, "a statement is only legally slanderous if, *when considered alone without innuendo,* it tends to injure Plaintiffs' trade or profession . . . or cause mental suffering and injury to Plaintiffs' reputation."   Id. (emphasis in original; internal citations omitted).   Similarly, the elements required to state a claim for slander of title under Florida law are "that there has been a false and malicious statement, oral or written, made in disparagement of a person's title to real or personal property, or of some right of his,

_____

[5]        As this Court is aware from the prior lawsuit, on March 20, 2009, the PTO rendered its decision on the reexamination proceeding regarding the Sen '226 Patent.  The PTO's decision confirmed the validity of the Sen '226 Patent over prior art claimed by Richards.

causing him special damage." Larson v. Correct Craft, Inc., 2005 WL 1902438, at *4 (M.D. Fla. Aug. 8, 2005) (quoting Old Plantation Corp. v. Maule Indus., 68 So. 2d 180, 181 (1953))

  In the instant case, none of the foregoing allegations have been alleged in Plaintiff's Complaint.  As an initial matter, it appears that Plaintiff is basing his defamation claim on the issuance of the '226 Patent, and therefore all statements made therein are purportedly false.  See Compl. at ¶ 64.  However, it strains logic for a patent, issued by a governmental agency such as the PTO, to be considered a defamatory statement.[6]  Even assuming, *arguendo*, that the '226 Patent itself is a "published false statement," Plaintiff has failed to allege, nor can he ever allege, any of the remaining elements of this cause of action.  The Sen Patent does not even reference Richards or the Richards Patent.  Therefore, it clearly is not "about the Plaintiff" or his purported property rights.  Moreover, as set forth in Carlson, a statement is only legally slanderous if, ***when considered alone without innuendo*** it tends to injure Plaintiff's trade or profession.   Carlson, 956 F.Supp. at 1006.  Here, a reader of the patent would need much more than innuendo to infer that the Sen Patent is about the Plaintiff or his patent.  Additionally, the notion that the issuance of the patent is a publication to a third party is absurd.  There are no allegations that *Defendants* contacted the undefined "third parties in the oil, gas and petrochemical industries," and published anything to them.  This intentional act by Defendants is a necessary element for a claim of slander or defamation, but Plaintiff has failed to allege it.

  To the extent that Plaintiff attempts to rely upon Defendants' statements to the PTO during the reexamination proceeding as a basis for his defamation claim, Plaintiff's claim must be dismissed.  PTO proceedings are quasi-judicial, and therefore, statements made in front of the

---

   [6]  After a diligent search, Defendants have uncovered no cases where an issued patent was held to be an actionable defamatory statement.

PTO are afforded the same privilege as statements made in a judicial proceeding.  See United States v. American Bell Tel. Co., 128 U.S. 315, 363 (1888) ("The patent . . . is the result of a course of proceeding *quasi* judicial in its character."); Ball Corp. v. Xidex Corp., 967 F.2d 1440, 1445 (10th Cir. 1992) ("We hold, therefore, that private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings."); see also Zinc v. Old Navy (Apparel) Inc., 348 F. Supp. 2d 275, 281 (S.D.N.Y. 2004) ("[S]tatements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy.").

For all the foregoing reasons, Count III cannot be sustained and must be dismissed, with prejudice.

**D.      Plaintiff's Tortious Interference Claim Fails to State A Cause of Action.**

The elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship."  Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994); Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985).

Again, Plaintiff fails to allege the necessary elements of this claim.  Plaintiff alleges generally, and in a conclusory fashion, that "Defendants intentionally and without justification have interfered severely with Plaintiff's past, ongoing, and prospective business relationships with various [unidentified] oil, gas and petrochemical companies."  Compl. at ¶ 93.  This general allegation is not enough to state a cause of action.  As set forth in Ethan Allen, Inc., it is "clear that [Plaintiff's] relationship with its past customers was not one upon which a claim for tortious

interference with a business relationship could be based." Ethan Allen, Inc., 647 So. 2d at 815. Therefore, this portion of the allegation fails to state a cause of action. Similarly, for the remaining unidentified companies, an action for tortious interference "requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." Id. Plaintiff makes no such allegations. Instead, Plaintiff's Complaint indicates that certain option agreements with at least two companies had already expired before any alleged interference. Compl. at ¶ 68. There are no allegations regarding the agreements Plaintiff claims to have had with any other companies.

Even if Plaintiff had alleged identifiable contracts with particular chemical companies, Plaintiff's claim still fails because Plaintiff has not, and cannot, allege that *Defendants* interfered with these entities. There are absolutely no allegations that Defendants contacted any petroleum companies. Defendants cannot have interfered if they never communicated with these third parties. See Martin Petroleum Corp. v. Amerada Hess Corp., 769 So. 2d 1105 (Fla 4th DCA 2000) (holding that supplier did not tortiously interfere with petroleum company's contract with service station operator where supplier did not initiate contact with supplier); Ethyl Corp. v. Balter, 386 So. 2d 1220 (Fla. 3d DCA 1980) (no tortious interference where defendant "did not even communicate" with third party).

Since Plaintiff cannot show actual or identifiable business relationships, or that Defendants interfered with these third parties, Count IV must be dismissed.

### E.     The Lanham Act is Wholly Inapplicable to Facts of This Case.

Count V is an unfair competition claim apparently based on a violation of 15 U.S.C. §1125(a). Compl. at ¶ 98. This section of the Lanham Act, however, "forbids unfair trade

practices involving infringement of trade dress, service marks, or trademarks." University of Florida v. KPB, Inc., 89 F.3d 773 (11th Cir. 1996). Plaintiff does not allege that Defendants are violating any of their rights to any trade dress, service marks or trademarks. Instead, Plaintiff is attempting to contort the language of this statute to fabricate a completely frivolous claim against Defendants. The Lanham Act simply has no bearing on this action. Count V must be dismissed, with prejudice.

### F.    Plaintiff Fails to Allege the Necessary Elements for Antitrust Claims.

Finally, Plaintiff attempts to allege antitrust claims against Defendants. In the patent context, a claimant may state a claim for an antitrust violation under 15 U.S.C. § 2 by alleging "the enforcement of a patent procured by fraud on the Patent Office . . . provided the other elements necessary to a § 2 case are present." Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172 (1965); see also K-Lath, Div. of Tree Island Wire (USA), Inc. v. Davis Wire Corp., 15 F. Supp. 2d 952 (C. D. Cal. 1998). "The Federal Circuit and Supreme Court clearly require the enforcement or assertion of the patent as an element necessary to establish antitrust liability." K-Lath, 15 F. Supp. 2d at 964. Thus, for the same reasons this Court lacks jurisdiction over Plaintiff's declaratory judgment claims, Plaintiff's antitrust claim must fail. Plaintiff has not alleged that Defendants have enforced or threatened to enforce the Sen Patent against Plaintiff. Plaintiff has also failed to allege any of the "other elements necessary to a § 2 case," such as allegations of a relevant market or the dominance of the Sen Patent therein. See Walker Process, 382 U.S. at 178. Thus, Plaintiff's Sherman Action claim cannot stand.

V.      **PLAINTIFF'S COUNSEL SHOULD BE SANCTIONED FOR UNREASONABLY
        AND VEXATIOUSLY MULTIPLYING THE PROCEEDING**

This Complaint (the fifth filed by Plaintiff) is merely another meritless chapter in the endless saga of claims asserted against Defendants by Plaintiff.  Plaintiff's counsel's behavior in needlessly pursuing this fruitless case is precisely the sort of conduct that 28 U.S.C. § 1927 seeks to prevent, and therefore, sanctions against Plaintiff's counsel are warranted.   In a wave of vexatious litigation, Plaintiff's counsel has caused Defendants to incur extraordinary costs to defend themselves in three lawsuits that have not yet proceeded past the initial pleadings stages, a reexamination proceeding before the PTO, and an abandoned appeal to the Eleventh Circuit Court of Appeals.  Such behavior warrants sanctions under 28 U.S.C. § 1927, which states "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

A brief review of the dockets show the various substantive and procedural issues with Plaintiff's claims, the excess work borne by the Defendants in defending themselves against the myriad of meritless claims, and that this is a particularly strong case for the invocation of the protections of Section 1927 to sanction Plaintiff's counsel for the unreasonable multiplication of these proceedings.  See Dockets attached hereto as **Composite Exhibit G.**  On August 21, 2007, Plaintiff filed the initial complaint in the first lawsuit, Richards v. Sen et al., Case No. 2:07-cv-14254-KMM.  Plaintiff subsequently amended the complaint on February 7, 2008, in response to which Defendants prepared and filed a motion to dismiss.  On March 38, 2009, the Court dismissed the case due to Plaintiffs' failure to select a mediator in violation of the Court's previous orders.

Rather than attempting to reopen the case, Plaintiff filed a second lawsuit and his third complaint in the Southern District of Florida, Case No. 2:08-cv-14165-KMM. Plaintiff's claims were strikingly similar to the claims in the first lawsuit, and included the same Defendants. Defendants were forced to prepare and file another motion to dismiss for various procedural and substantive defects in the complaint. Due to the similar nature of the actions, the Court consolidated the first and second lawsuit and all further proceedings continued under the first lawsuit, Case No. 2:07-cv-14254-KMM.

Plaintiff filed a motion to re-open the initial lawsuit on September 16, 2008, then subsequently amended the Complaint for a fourth time on October 3, 2008. Once again, Defendants were taxed with preparing a motion to dismiss on a variety of procedural and substantive deficiencies in Plaintiff's complaint. On November 12, 2008, this Court granted Defendants' motion to dismiss, finding that Plaintiff failed to establish jurisdiction over the non-resident Defendants. Unhappy with this second dismissal of his case, Plaintiff moved for reconsideration of the order and, at the same time, prematurely filed a Notice of Appeal. As a result, Defendants were required to respond to Plaintiff's meritless motion for reconsideration, as well as prepare a response to jurisdictional questions posed by the Eleventh Circuit Court of Appeals. Plaintiff then abandoned his appeal in March of 2009 by failing to submit an appellate brief, after Defendants spent significant time and money in connection with the jurisdictional briefing.

Thereafter, Plaintiff moved to reopen the case for a second time on May 19, 2009. The Court, upon due consideration, denied Plaintiff's motion for reconsideration and to re-open the case finding, once again, that Plaintiff failed to establish jurisdiction over the non-resident Defendants.

Yet, Plaintiff refused to stop.  This is now the third lawsuit filed by Plaintiff, and the fifth complaint.  The Complaint is a mere modification of the initial complaint filed by Plaintiff against these same Defendants, with the same fatal deficiencies.  Plaintiff has once again had his case dismissed for failure to comply with a Court's order by failing to file a joint scheduling report.  [D.E. 8].  Defendants have once again been required to prepare and file a time-consuming and costly motion to dismiss.  Not content with litigating in one forum at a time, Plaintiff also resumed his efforts to seek additional relief before the PTO by filing yet another petition seeking a reexamination of the validity of the Sen Patent.  Therefore, once again, Defendants must endure concurrent proceedings regarding issues that have already been decided.

There could be no clearer example of "unreasonably and vexatiously" multiplying the proceedings, which occasioned excess costs for the Defendants.  <u>Smartt v. First Union Nat'l Bank</u>, 245 F. Supp. 2d 1229, 1235 (M.D. Fla. 2003) ("[T]o justify an imposition of sanctions: 1) [the party must show] unreasonable and vexatious conduct; 2) this unreasonable and vexatious conduct [multiplied] the proceedings; and 3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct."); <u>Torres v. City of Orlando</u>, 264 F. Supp. 2d 1046, 1053 (M.D. Fla. 2003).  The purpose of Section 1927 is to "deter frivolous litigation and abusive practices by litigants and to ensure that those who create unnecessary costs bear them."  <u>Smartt</u>, 245 F. Supp. 2d at 1235.  In a similar situation, the Court in <u>Smartt</u> determined that sanctions were warranted:

> The instant case is a textbook example of such disregard [for the orderly process of justice.]  It represents Smartt's fifth separate action arising out of an issue which the Court is surprised ever saw the inside of a courthouse.  The Court dismissed one action and remanded the other, awarding costs under 28 U.S.C. § 1447(c).  Furthermore, after consolidation of his almost identical state court actions, the state circuit court dismissed Smartt's claims because he fabricated evidence.  *In his first four attempts, Smartt did not*

> *articulate anything resembling an actionable claim.   Smart's current claims are equally unreasonable, and he must bear the costs and fees expended by First Union to answer them."*

Id. at 1235 (emphasis added).  Like the plaintiff in Smartt, Plaintiff has had multiple bites at the apple, yet still fails to make sufficient allegations to subject the non-resident Defendants to jurisdiction in this Court.  Even though this Court has repeatedly dismissed Plaintiff's claims on procedural and substantive grounds, Plaintiff's counsel continues to file pleadings that require Defendants' response.  It is not sufficient for Plaintiff's counsel to argue that he was merely asserting his client's interests and that the client had a good faith belief in the claim.  Torres, 264 F. Supp. 2d at 1054.   Counsel has a choice to withdraw from representing a client who stubbornly insisted that he pursue frivolous litigation.  Id. at 1055.  Further, counsel has a duty of "complete candor and primary loyalty to the court before which they practice.  An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly."  Id.  Plaintiff's counsel's intentional, continued prosecution of this case, which has no plausible legal or factual basis, is unreasonable and vexatious to the judicial process.  See Torres, 264 F. Supp. 2d at 1055.  Accordingly, Plaintiff's counsel should bear the costs borne by Defendants as a result of Plaintiff's needless multiplication of the proceedings between the parties.  Plaintiff's counsel should be sanctioned pursuant to 28 U.S.C. § 1927 to the extent Defendants' costs were incurred as a result of Plaintiff's multiplication of the proceedings.[7]

---

[7]        At the direction of the Court, Defendants will submit an affidavit of excess costs and fees incurred as a result of Plaintiff's actions.

## CONCLUSION

For all the reasons set forth herein, Plaintiff's Complaint must be dismissed in its entirety, Plaintiff should be specifically directed not to re-file another lawsuit in Florida against these Defendants, and Plaintiff's counsel should be sanctioned pursuant to 28 U.S.C. §1927.

## CERTIFICATE PURSUANT TO LOCAL RULE 7.A.3

Although a pre-filing conference is not required in connection with a Motion to Dismiss, given the circumstances of this case, undersigned counsel conferred with counsel for Plaintiff regarding this motion, as well as Defendants' intention to seek sanctions for vexatious litigation. When this action was dismissed due to Plaintiff's counsel's failure to meet a Court deadline, undersigned counsel urged Plaintiff's counsel (both lead and local) not to re-open this case, or to risk sanctions.  Plaintiff's counsel proceeded to re-open this case.

Dated:  November 16, 2009

Respectfully submitted,

**FOLEY & LARDNER LLP**
**Attorneys for Defendants**
Bank of America Tower, Suite 1600
100 S.E. 2nd Street
Miami, Florida 33131
Main Tel:  305-482-8409
Fax No:  305-482-8600

By:  s/ *Laura Ganoza*
Laura Ganoza, Esq.
Florida Bar No. 0118532
lganoza@foley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 16, 2009 I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on **Jeffrey H. Garland, Esq.**, 102 N. 2nd Street, Fort Pierce, Florida 34950 and **Patrick D. Kelly, Esq.**, 11939 Manchester #403, St. Louis, MO, 63131, via transmission of Notices of Electronic Filing generated by CM/ECF.

_s/ Laura Ganoza_